# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

ASHWIN RAMASWAMI,

      Plaintiff,

v.

SHAWN MICAH TRESHER
STILL, LANDMARK
COMMUNICATIONS, INC.,

      Defendants.

Case No. 1:25-cv-04483-ELR

## PLAINTIFF'S RESPONSE TO DEFENDANT STILL'S
## <u>MOTION TO DISMISS</u>

### October 2, 2025

Of counsel:
Michael J. Teter
TETER LEGAL
P.O. Box 522365
Salt Lake City, UT 84152
Tel: (385) 262-3650
michael@teterlegal.com

<u>*/s/ Bruce P. Brown*</u>
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 386-6856
bbrown@brucepbrownlaw.com

*Counsel for Plaintiff Ashwin Ramaswami*

# TABLE OF CONTENTS

I.    INTRODUCTION AND FACTS ........................................................... 1

II.   POLITICAL CAMPAIGNS DO NOT CREATE A LICENSE TO
      DEFAME ....................................................................................... 3

III.  STILL'S MOTION TO DISMISS SHOULD BE DENIED ................. 4

      A.   Ramaswami Has Stated a Claim for Defamation ................. 4

           1.   The Phrase "Caught Soliciting Children" Can Reasonably be
                Viewed as Defamatory................................................. 6

           2.   The Statements Still and Landmark Made About Ramaswami
                Imply Criminal Wrongdoing and a Debasing Act – But
                Ramaswami Has Also Alleged Special Damages................... 11

           3.   Still's and Landmark's Statements Were Not Opinion......... 14

      B.   Ramaswami  Sufficiently Alleges Actual Malice ................ 17

           1.   The Complaint Adequately Pleads Actual Malice ................. 18

           2.   Still's Other Arguments about Actual Malice are Meritless. 20

      C.   The Complaint States a Claim for False Light .................... 22

           1.   Ramaswami may allege both defamation and false light
                claims in the Complaint under Federal Rule 8(d) ................. 23

           2.   False light claim is not based on "innuendo" ........................ 24

      D.   Litigation Expenses and Punitive Damages........................ 25

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. James*, 779 F.2d 1536 (11th Cir. 1986) ............................ 23

*Anderson v. The Augusta Chronicle*, 355 S.C. 461 (2003) ................................. 4

*Andrews v. D'Souza,* 696 F. Supp. 3d 1332 (N.D. Ga. 2023) ........................... 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ............................................................... 1

*Balla v. Hall*, 59 Cal. App. 5th 652 (2021) ......................................................... 4

*Beamer v. Nishiki*, 66 Haw. 572 (1983) ............................................................... 4

*Bennett v. Hendrix*, 325 F. App'x 727 (11th Cir. 2009) ...................................... 3

*Blankenship v. Napolitano*, 451 F. Supp. 3d 596 (S.D.W. Va. 2020) ........... 3, 4

*Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25 (2002) ................................. 4

*Bryant v. Cox Enters., Inc.*, 311 Ga. App. 230 (2011) ............................ 5, 15, 21

*Camp v. Yeager*, 601 So.2d 924 (Ala. 1992) ....................................................... 4

*Cmty. Newspaper Holdings, Inc. v. King*, 299 Ga. App. 267  (2009) ................ 8

*Cottrell v. Smith*, 299 Ga. 517 (2016) ............................................................... 11

*Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967) ............................................... 20

*Equity Prime Mortgage, LLC v. Greene for Congress, Inc.*, 373 Ga. App. 441
    (2024) ................................................................... 3, 5, 6, 15 - 17

*Fiske v. Stockton*, 171 Ga. App. 601, 602 (1984) ........................................... 5, 7

*Gast v. Brittain*, 277 Ga. 340 (2003) ................................................................ 15

*Harte-Hanks Comms., Inc. v. Connaughton*, 491 U.S. 657 (1989) ................... 3

*Horsely v. Rivera,* 292 F.3d 695 (11th Cir. 2002) ............................................ 21

*Howard v. Pope*, 282 Ga. App. 137 (2006) ........................................................ 3

*Hynes v. New Hampshire Democratic Party*, 175 N.H. 781 (2023) .................. 3

*Jonas v. Lake Cty. Leader*, 953 F. Supp. 2d 1117 (D. Mont. 2013) .................. 4

*Krass v. Obstacle Racing Media,* No. 1:19-CV-05785-JPB, 2021 U.S. Dist. LEXIS 206760 (N.D. Ga. Feb. 2, 2021) ........................................................ 23

*Lemelson v. Bloomberg*, 903 F. 3d 19 (1st Cir. 2018)................................. 18, 19

*Mathis v. Cannon*, 276 Ga. 16 (2002) ............................................................... 5

*McIntyre v. Ohio Elections Commission,* 514 U.S. 334 (1995) ....................... 21

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ....................................... 15

*Moore v. Lowe*, 591 F. Supp. 3d 1087 (N.D. Ala. 2022)................................... 3

*Nevada Ind. Broadcasting Corp. v. Allen*, 99 Nev. 404 (1983)........................ 4

*New York Times v. Sullivan,* 376 U.S. 254 (1964) ......................................... 18

*Newman v. Delahunty*, 293 N.J. Super. 491 (1994) .......................................... 4

*Oskouei v. Matthews*, 321 Ga. 1 (2025).............................................................. 5

*Peabody Energy Corp. v. Strata Products Worldwide, LLC*, 375 Ga. App. 856 (2025) ......................................................................................................... 6, 10

*Pritt v. Republican Nat. Committee*, 210 W. Va. 446 (2001) ............................ 4

*Project Veritas v. CNN, Inc.,* 121 F.4th 1267 (11th Cir. 2024) .................. 18, 19

*Rao v. Tropical Bar by Punta Cana, LLC,* No. 3:24-CV-121-CDL, 2025 U.S. Dist. LEXIS 69416 at *4 (M.D. Ga. April 11, 2025) ..................................... 22

*Richardson v. Jackson*, No. 1:20-cv-00519-LMM-WEJ, 2021 WL 9598490 (N.D. Ga. Sept. 15, 2021) ...................................................................... 11, 12

*Rosenblum v. Budd*, 538 P.3d 354 (Colo. App. 2023) ......................................... 3

*Spreadbury v. Bitterroot Public Library*, 856 F. Supp. 2d 1195 (D. Mont. 2012) ................................................................................................................. 4

*St. Amant v. Thompson*, 390 U.S. 727 (1968) .................................................. 20

*State v. Cosmo*, 295 Ga. 76, 78 (2014) ............................................................. 8

*Swanson Towing & Recovery, LLC v. Wrecker 1, Inc.*, 342 Ga. App. 6 (2017) ....................................................................................................................... 11, 13

*Tirio v. Dalton*, 2019 IL App. (2d) 181019 (2019) ............................................ 4

*Youngblood v. McDermott Vida-Flo USA Fulfillment, LLC Hydration Station USA Franchise Sys., LLC,* Fulton County State Court, 2025 Ga. State LEXIS 1419 (March 24, 2025) ...................................................................... 24

*Zarach v. Atlanta Claims Ass'n,* 231 Ga. App. 685 (1998) ............................. 24

*Zuckerbrot v. Lande*, 167 N.Y.S.3d 313 (N.Y. Sup. Ct. 2022) ......................... 20

**Statutes**

O.C.G.A. § 9-11-8(e)(2) .................................................................................... 24

O.C.G.A. § 16-5-1 ............................................................................................. 13

O.C.G.A. § 16-6-5 ......................................................................................... 7, 12

O.C.G.A. § 16-12-100.2(d)(1) ............................................................................ 7

O.C.G.A. § 42-1-12(a)(9)(B)(iv) ...................................................................... 12

O.C.G.A. § 51-5-4(a)(1) .................................................................................... 14

O.C.G.A. § 51-5-4(a)(2) .................................................................................... 14

**Other Authorities**

Merriam-Webster.com ......................................................................................... 7

# I.    Introduction and Facts[1]

In 2024, Ashwin Ramaswami, then only 24-years-old, decided to challenge incumbent state senator Shawn Still to represent Georgia's 48th senate district. The fact that Still had sought to overturn the 2020 presidential election and served as a fake elector motivated Ramaswami to seek to become his hometown's senator.

Because of Ramaswami's youth, he made a concerted effort to engage young future constituents and voters. As part of that, in January 2024, he filed a public open records request under his own name in which he sought the names (not the contact information) of high school students attending local schools. The Fulton County School District denied the request and Ramaswami pursued it no further.

In September 2024, Still and his campaign vendor, Landmark Communications LLC, distributed two flyers to over 100,000 households in the district. Those flyers told voters that Ramaswami had been "caught soliciting children" in local schools and "in your area." One flyer included an image of Ramaswami designed to look like a wanted poster, with the warning "NEIGHBORHOOD ALERT" posted across it in bold text. The other flyer

---

[1]  When evaluating Still's motion to dismiss, all of Ramaswami's factual allegations are accepted as true, and all reasonable inferences are drawn in his favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather than restate each of those allegations here, Ramaswami will reference them with citations to his Complaint as needed when responding to Still's arguments.

included a photo of a child—one looking younger than even high school age—receiving a call from Ramaswami. The message Still and Landmark were communicating to recipients was clear: Ramaswami was "caught" soliciting children for sex.

That's how those receiving the flyers understood the message. Soon after Still and Landmark began distributing them, Ramaswami started receiving death threats and messages labeling him a pedophile, creep, gross, and a child predator. Ramaswami had to take actions to protect himself and his family from the threats.

The flyers and the message they invited their recipients to reasonably draw from them were false. Ramaswami was not "caught soliciting children." Indeed, even the underlying factual assertion that Still and Landmark made in the flyers—that Ramaswami requested  contact information—was untrue.

Still and Landmark knew the falsity of the message they were conveying with these flyers. Indeed, there has never been any suggestion that Ramaswami sought to solicit children for sex. Without regard for the harm it would cause Ramaswami to be unfairly and falsely accused of such heinous crimes, Still and Landmark published and widely distributed the flyers.

In July 2025, Ramaswami formally sought the retraction of the false statements about him. Still and Landmark failed to retract the publications. Ramaswami then commenced this action for defamation and false light. Still

seeks to dismiss Ramaswami's complaint. Notably, Landmark has not so moved, likely recognizing—as the law does—that Ramaswami has stated a plausible claim for relief.

The message conveyed by Still's and Landmark's flyers was that Ramaswami was soliciting children for sex. That false and defamatory assertion can find no protection in the First Amendment. Politics may be a nasty affair, but the truth matters and the law provides Ramaswami a remedy for the reputational harm caused by Still's and Landmark's actions.

## II.  Political Campaigns Do Not Create a License to Defame

Although Still does not expressly argue that a candidate in a campaign is free to defame their rivals, he peppers his motion with enough references to the nature of campaigns to warrant addressing the point head on.

Courts across the country, including the United States Supreme Court, have routinely found that statements made during a political campaign are actionable as defamation. *See, e.g.*, *Harte-Hanks Comms., Inc. v. Connaughton*, 491 U.S. 657 (1989); *Bennett v. Hendrix*, 325 F. App'x 727, 730 (11th Cir. 2009); *Equity Prime Mortgage, LLC v. Greene for Congress, Inc.*, 373 Ga. App. 441 (2024); *Howard v. Pope*, 282 Ga. App. 137 (2006); *Hynes v. New Hampshire Democratic Party*, 175 N.H. 781 (2023); *Rosenblum v. Budd*, 538 P.3d 354 (Colo. App. 2023); *Moore v. Lowe*, 591 F. Supp. 3d 1087 (N.D. Ala. 2022); *Blankenship v. Trump*, 558 F. Supp. 3d 316 (S.D.W. Va. 2021);

*Balla v. Hall*, 59 Cal. App. 5th 652 (2021); *Blankenship v. Napolitano*, 451 F. Supp. 3d 596 (S.D.W. Va. 2020), *on reconsideration in part sub nom. Blankenship v. Fox News Network, LLC*, 510 F. Supp. 3d 356 (S.D.W. Va. 2020); *Tirio v. Dalton*, 2019 IL App. (2d) 181019 (2019); *Jonas v. Lake Cty. Leader*, 953 F. Supp. 2d 1117 (D. Mont. 2013); *Spreadbury v. Bitterroot Public Library*, 856 F. Supp. 2d 1195 (D. Mont. 2012); *Anderson v. The Augusta Chronicle*, 355 S.C. 461 (2003); *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25 (2002); *Pritt v. Republican Nat. Committee*, 210 W. Va. 446 (2001); *Newman v. Delahunty*, 293 N.J. Super. 491 (1994); *Camp v. Yeager*, 601 So.2d 924 (Ala. 1992); *Nevada Ind. Broadcasting Corp. v. Allen*, 99 Nev. 404 (1983); *Beamer v. Nishiki*, 66 Haw. 572 (1983).

In short, political campaigns do not create a license to defame.

## III.        Still's Motion to Dismiss Should Be Denied

### A.        Ramaswami Has Stated a Claim for Defamation

Still seeks dismissal of Count I of the Complaint, for defamation, by arguing that the statements he and Landmark published about Ramaswami are true, that they are opinions, and that Ramaswami has not pleaded actual malice. Each of these arguments fail on the law and the facts.

To succeed in a defamation claim, a plaintiff must establish that the defendant published, with the requisite degree of fault, a false statement of

4

# I.   Introduction and Facts[1]

In 2024, Ashwin Ramaswami, then only 24-years-old, decided to challenge incumbent state senator Shawn Still to represent Georgia's 48th senate district. The fact that Still had sought to overturn the 2020 presidential election and served as a fake elector motivated Ramaswami to seek to become his hometown's senator.

Because of Ramaswami's youth, he made a concerted effort to engage young future constituents and voters. As part of that, in January 2024, he filed a public open records request under his own name in which he sought the names (not the contact information) of high school students attending local schools. The Fulton County School District denied the request and Ramaswami pursued it no further.

In September 2024, Still and his campaign vendor, Landmark Communications LLC, distributed two flyers to over 100,000 households in the district. Those flyers told voters that Ramaswami had been "caught soliciting children" in local schools and "in your area." One flyer included an image of Ramaswami designed to look like a wanted poster, with the warning "NEIGHBORHOOD ALERT" posted across it in bold text. The other flyer

---

[1] When evaluating Still's motion to dismiss, all of Ramaswami's factual allegations are accepted as true, and all reasonable inferences are drawn in his favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather than restate each of those allegations here, Ramaswami will reference them with citations to his Complaint as needed when responding to Still's arguments.

included a photo of a child—one looking younger than even high school age—receiving a call from Ramaswami. The message Still and Landmark were communicating to recipients was clear: Ramaswami was "caught" soliciting children for sex.

That's how those receiving the flyers understood the message. Soon after Still and Landmark began distributing them, Ramaswami started receiving death threats and messages labeling him a pedophile, creep, gross, and a child predator. Ramaswami had to take actions to protect himself and his family from the threats.

The flyers and the message they invited their recipients to reasonably draw from them were false. Ramaswami was not "caught soliciting children." Indeed, even the underlying factual assertion that Still and Landmark made in the flyers—that Ramaswami requested  contact information—was untrue.

Still and Landmark knew the falsity of the message they were conveying with these flyers. Indeed, there has never been any suggestion that Ramaswami sought to solicit children for sex. Without regard for the harm it would cause Ramaswami to be unfairly and falsely accused of such heinous crimes, Still and Landmark published and widely distributed the flyers.

In July 2025, Ramaswami formally sought the retraction of the false statements about him. Still and Landmark failed to retract the publications. Ramaswami then commenced this action for defamation and false light. Still

seeks to dismiss Ramaswami's complaint. Notably, Landmark has not so moved, likely recognizing—as the law does—that Ramaswami has stated a plausible claim for relief.

The message conveyed by Still's and Landmark's flyers was that Ramaswami was soliciting children for sex. That false and defamatory assertion can find no protection in the First Amendment. Politics may be a nasty affair, but the truth matters and the law provides Ramaswami a remedy for the reputational harm caused by Still's and Landmark's actions.

## II.    Political Campaigns Do Not Create a License to Defame

Although Still does not expressly argue that a candidate in a campaign is free to defame their rivals, he peppers his motion with enough references to the nature of campaigns to warrant addressing the point head on.

Courts across the country, including the United States Supreme Court, have routinely found that statements made during a political campaign are actionable as defamation. *See, e.g.*, *Harte-Hanks Comms., Inc. v. Connaughton*, 491 U.S. 657 (1989); *Bennett v. Hendrix*, 325 F. App'x 727, 730 (11th Cir. 2009); *Equity Prime Mortgage, LLC v. Greene for Congress, Inc.*, 373 Ga. App. 441 (2024); *Howard v. Pope*, 282 Ga. App. 137 (2006); *Hynes v. New Hampshire Democratic Party*, 175 N.H. 781 (2023); *Rosenblum v. Budd*, 538 P.3d 354 (Colo. App. 2023); *Moore v. Lowe*, 591 F. Supp. 3d 1087 (N.D. Ala. 2022); *Blankenship v. Trump*, 558 F. Supp. 3d 316 (S.D.W. Va. 2021);

*Balla v. Hall*, 59 Cal. App. 5th 652 (2021); *Blankenship v. Napolitano*, 451 F. Supp. 3d 596 (S.D.W. Va. 2020), *on reconsideration in part sub nom. Blankenship v. Fox News Network, LLC*, 510 F. Supp. 3d 356 (S.D.W. Va. 2020); *Tirio v. Dalton*, 2019 IL App. (2d) 181019 (2019); *Jonas v. Lake Cty. Leader*, 953 F. Supp. 2d 1117 (D. Mont. 2013); *Spreadbury v. Bitterroot Public Library*, 856 F. Supp. 2d 1195 (D. Mont. 2012); *Anderson v. The Augusta Chronicle*, 355 S.C. 461 (2003); *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25 (2002); *Pritt v. Republican Nat. Committee*, 210 W. Va. 446 (2001); *Newman v. Delahunty*, 293 N.J. Super. 491 (1994); *Camp v. Yeager*, 601 So.2d 924 (Ala. 1992); *Nevada Ind. Broadcasting Corp. v. Allen*, 99 Nev. 404 (1983); *Beamer v. Nishiki*, 66 Haw. 572 (1983).

In short, political campaigns do not create a license to defame.

## III.        Still's Motion to Dismiss Should Be Denied

### A.        Ramaswami Has Stated a Claim for Defamation

Still seeks dismissal of Count I of the Complaint, for defamation, by arguing that the statements he and Landmark published about Ramaswami are true, that they are opinions, and that Ramaswami has not pleaded actual malice. Each of these arguments fail on the law and the facts.

To succeed in a defamation claim, a plaintiff must establish that the defendant published, with the requisite degree of fault, a false statement of

fact concerning the plaintiff that is defamatory and unprivileged. *See, e.g.*, *Mathis v. Cannon*, 276 Ga. 16, 20–21 (2002).

Still contends that this Court should dismiss Ramaswami's defamation claim against him at this preliminary stage because the statements Still made about Ramaswami are true and because they are statements of opinion. Still is wrong on both fronts and in multiple ways.

The question for the court when assessing a motion to dismiss a defamation claim is whether the complained-of statements could reasonably be construed to carry a defamatory meaning. *Bryant v. Cox Enters., Inc.*, 311 Ga. App. 230, 235 (2011). If multiple meanings could arise from the statements, the matter cannot be decided by the court, but poses a question of fact for a jury. *Fiske v. Stockton*, 171 Ga. App. 601, 602 (1984), *overruled on other grounds by Oskouei v. Matthews*, 321 Ga. 1 (2025). Further, simply labeling a statement as one of opinion does not shield the publisher from potential liability. *Equity Prime Mortgage, LLC v. Greene for Congress, Inc.*, 373 Ga. App. 441, 445 (2024). An opinion that can reasonably be interpreted as stating or implying defamatory facts that are capable of being proved false can sustain a defamation claim. *Id.*

Still's published statements about Ramaswami are not true, they are not opinions, and they are reasonably capable of carrying a defamatory meaning.

### 1. The Phrase "Caught Soliciting Children" Can Reasonably be Viewed as Defamatory

Still argues that "[t]he use of the term 'soliciting' in the mailers that form the basis of Plaintiff's claims is not false." (Doc. 9-1 at 9.) He then proceeds to explain some ways in which the term "soliciting" is used to mean things other than soliciting someone for sex. By focusing on a single word, Still seeks to convince this Court that because soliciting has other, non-defamatory, meanings, that Ramaswami's claim should be dismissed. Still's argument misunderstands how courts assess a defamation claim when considering a motion to dismiss and he misconstrues Ramaswami's allegations.

As a starting point, "[w]here evidence is conflicting, the issue of truthfulness is a question of fact for the jury." *Peabody Energy Corp. v. Strata Products Worldwide, LLC*, 375 Ga. App. 856, 860 (2025) (internal quotations and citations omitted). Still's truthfulness argument depends on a false premise: that there exists only one, unambiguous meaning of his flyers. Only if the publication's meaning is "so unambiguous as to bear only one reasonable interpretation" may a court decide the question as a matter of law. *Equity Prime Mortgage*, 373 Ga. App. at 445. If a publication is "capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say…which of the two meanings would be attributed

to it by those to whom it is addressed or by whom it may be read." *Fiske*, 171 Ga. App. at 602.

Here, Still concedes that "solicit" has multiple meanings, one of which is—as the Complaint alleges—to seek to commit a sexual act with someone. (Doc. 1 at ¶¶ 76, 78, 80-97.) Instead, he advances other potential meanings. Those may well be, but they are beside the point at this stage. Still is free to argue to a jury how recipients would interpret the flyers, but he cannot usurp the jury's role in determining which meaning to attribute to the flyers. The Complaint explains why the word "solicit" has a defamatory meaning. That meaning is confirmed through dictionaries,[2] statutes,[3] news stories,[4] and case

---

[2] *See, e.g.*, "Solicit." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/solicit (last accessed Sept. 27, 2025) ("to offer to engage in sex acts and especially sexual intercourse with (someone) in exchange for pay").

[3] *See, e.g.*, O.C.G.A. § 16-12-100.2(d)(1); O.C.G.A. § 16-6-5.

[4] *See, e.g.*, *WSU Tennis Coach, One Other Arrested for Child Solicitation and Possession of CSAM*, KTTC News, (Sept. 26, 2025), https://www.kttc.com/2025/09/26/two-winona-men-arrested-facing-charges-child-solicitation-possession-csam/ (last accessed Sept. 27, 2025); *Skippack Township Supervisor and Day Care Owner Accused of Soliciting Minor in Maryland*, KYW Newsradio (Sept. 26, 2025), https://www.audacy.com/kywnewsradio/news/local/skippack-twp-official-child-porn-charges-maryland (last accessed Sept. 27, 2025); *Schertz PD Looking for Man Soliciting Children for Sex During Walk to School*, KTSA, (Sept. 4, 2025), https://www.ktsa.com/schertz-pd-looking-for-man-soliciting-children-for-sex-during-walk-to-school/ (last accessed Sept. 27, 2025); *23 Men Accused of Soliciting Children for Sex in Triad Sting Operation*, Fox8 WGHP, (Nov. 20, 2024), https://myfox8.com/news/north-carolina/piedmont-triad/23-men-accused-of-soliciting-children-for-sex-in-triad-sting-operation/ (last accessed Sept. 27, 2025).

law.[5] And, again, Still does not contend otherwise.

Moreover, Still's focus on a single word is an attempt to distract from the full contents of the flyers. That is not the approach the law requires. Instead, "the whole item, including [head]lines, should be read and construed together, and its meaning and signification thus determined." *Cmty. Newspaper Holdings, Inc. v. King*, 299 Ga. App. 267, 270(2009). While Still would like this court to take an innocent, non-defamatory view of the flyers, he had something else in mind for the flyers' recipients. That's why he and Landmark said that Ramaswami was "soliciting children" and not that Ramaswami was "soliciting contact information." Additionally, Still and Landmark included words and images that promote the very defamatory meaning of which Ramaswami complains. Specifically:

- The phrase the flyers use is not simply "solicit," but "soliciting children." (Doc. 1 at ¶¶ 61-64, 76, 80.) While Still argues that the flyers were truthful because Ramaswami was "soliciting information from a government" (Doc. 9-1at 5), the flyers said Ramaswami was "soliciting children" not "soliciting information about children." (Doc. 1 at ¶¶ 61-64.)

---

[5] *See, e.g.*, *State v. Cosmo*, 295 Ga. 76, 78 (2014) ("Thus, attempt within OCGA § 16-12-100.2(d)(1) involves two elements: intent to commit a crime (in this case, intent *to solicit a child for an unlawful sexual offense*), and the taking of a substantial step toward the commission of that crime (in this case, a substantial step toward soliciting a child for that unlawful offense") (emphasis added).

- The flyers not only say that Ramaswami was "soliciting children," but that he was "caught" doing so. (Doc. 1 at ¶¶ 61-64, 76, 80.) "Caught" indicates wrongdoing. It also suggests that Ramaswami sought to hide his efforts. That was not the case. (Doc. 1 at ¶ 80.) Thus, "caught" falsely implies two facts. Still never addresses that word.

- To buttress the implication of "soliciting children," the flyers also misrepresent Ramaswami's open records request, falsely stating that he sought children's contact information. (Doc. 1 at ¶¶ 61-64, 76, 80, 81, 86.) The false nature of this assertion added to the flyers' purpose to have recipients view the phrase "soliciting children" as nefarious.

- The flyers contained imagery that reenforced reading the phrase "soliciting children" in a defamatory manner. One flyer included an image designed to look like a wanted poster with Ramaswami's picture that declared in oversized, bold writing: "NEIGHBORHOOD ALERT State Senate Candidate Ashwin Ramaswami is soliciting children in your area." (Doc. 1 at ¶ 63.) The other flyer contains an image of a child—who appears closer to elementary-school age than high school age—receiving a call from Ramaswami with the bolded words: "Senate candidate Ashwin Ramaswami was caught soliciting children in local schools." (Doc. 1 at ¶ 61.) In the flyers, Still and Landmark put special emphasis on the words "caught" and

"minors," having them stand out not only by bolding them, but by placing them in bright red. (Doc. 1 at ¶¶ 61, 63.)

In short, Still and Landmark designed the flyers to promote the very interpretation that Still now self-servingly disavows.

Again, at this stage, the only inquiry is whether the flyers are capable of multiple interpretations, one of which is defamatory. *Peabody Energy Corp.*, 375 Ga. App. at 860. Still does not argue that the flyers are not reasonably capable of a defamatory meaning—he just suggests that there are other non-defamatory meanings, as well. (Doc. 9-1at 9-10.)

That should end the matter. But the court need not take Ramaswami's word for the defamatory interpretation. As the Complaint details, the recipients of Still's and Landmark's flyers also took them to be alleging that Ramaswami was seeking to solicit children for sex. (Doc. 1 at ¶¶ 140-41.) After Still and Landmark sent the flyers, Ramaswami began receiving death threats and comments referring to him as a pedophile, pervert, gross, and a creeper. (Doc. 1 at ¶¶ 140-41.)

Finally, Still does not contend that falsely stating someone has been caught soliciting children for sex is non-defamatory. Nor could he. *See, e.g.*, *Moore*, 591 F. Supp. 3d at 1106 (statement that plaintiff had "intimate relationships" with minors was capable of defamatory meaning); *Bennett*, 325 F. App'x at 740-41 (campaign flyer containing mug shot of candidate with

implication he had been convicted could be construed as defamatory by factfinder). Additionally, Still does not suggest that the defamatory understanding of "caught soliciting children" was true. He fails, therefore, in his argument that the flyers are truthful and therefore not capable of sustaining a defamatory meaning.

2.     *The Statements Still and Landmark Made About Ramaswami Imply Criminal Wrongdoing and a Debasing Act – But Ramaswami Has Also Alleged Special Damages*

Still contends that because "the language of the mailers also does not charge Plaintiff with a specific crime…they cannot be actionable as false statements of fact." (Doc. 9-1at 11.) To support that premise, Still relies on three cases: *Swanson Towing & Recovery, LLC v. Wrecker 1, Inc.*, 342 Ga. App. 6, 11 (2017), *Cottrell v. Smith*, 299 Ga. 517, 524 (2016), and *Richardson v. Jackson*, No. 1:20-cv-00519-LMM-WEJ, 2021 WL 9598490, *15 (N.D. Ga. Sept. 15, 2021). These cases do not help Still.

In *Swanson,* the defendant referred to the plaintiffs as having "no morals" and as "mean, vulgar, demeaning[] crook[s]." *Swanson*, 342 Ga. App. at 11. The court found that those words were opinion, not statements that could be verified as true or false. *Id.*

In *Cottrell*, the matter came to the Supreme Court of Georgia on a judgment notwithstanding the verdict, in which a jury found for the plaintiff on a defamation claim, but also found no special damages. 299 Ga. at 522-23.

The Supreme Court of Georgia agreed with the trial court that the plaintiff had failed to demonstrate actual malice as to any of many alleged defamatory statements. *Id*. at 523-31. *Cottrell* provides no analysis about what might constitute a sufficient allegation of criminal conduct to constitute defamation per se. To the extent *Cottrell* is valuable, it aids Ramaswami. The Georgia Supreme Court agreed with the superior court that the defendant's statement that the plaintiff was "participat[ing] in the theft of [another's] technology" was arguably defamation per se sufficient to support the jury's verdict. *Id*. at 527. But because there was insufficient evidence of actual malice, the plaintiff's claim regarding that statement failed.

And in *Richardson*, the defamation claim arose from a notice posted at the Fulton County jail that read: "Public Defender Christine Richardson may not enter the Fulton County Jail. If she is observed onside confiscate her Jail ID, escort her out of the facility, and notify Security Command immediately." 2021 WL 9598490, * 15. The magistrate found that the notice was true—the plaintiff was banned from the jail—and did not "charge plaintiff with criminal activity or imply that she is a criminal." *Id*.

Separately and together, these cases offer nothing to Still's motion. The Complaint alleges that Still's and Landmark's flyers implied that Ramaswami was soliciting children for sex – a specific crime. (Doc. 1 at ¶ 135 (citing O.C.G.A. § 16-6-5 and O.C.G.A. § 42-1-12(a)(9)(B)(iv)). This is unlike

the broad, unprovable statements of *Swanson* that someone lacks morals or is a crook. Nor is it like the sign in *Richardson* that accurately observed that the public defender was not permitted in the jail. If the Complaint's allegations are similar to any case cited by Still, it is *Cottrell*, but there, the statement regarding "theft" *was* found to constitute defamation per se. It was only the lack of actual malice that led the superior court to enter judgment for defendants notwithstanding the jury's verdict.

Still appears to argue that a statement can only be defamation per se if the speaker uses terms that appear in the title of a criminal statute. (Doc. 9-1at 12).  Under Still's theory, it is not defamation per se for John to say falsely that "Jane killed Sam" because "kill" is not in the title of Georgia's homicide statute. *See* O.C.G.A. § 16-5-1. That is not the law of defamation, nor has Still provided any cases to support his legal proposition.

Instead, the cases regarding defamation per se refer to the statements "giv[ing] the impression that the crime is actually being charged against the individual and couched in language as might reasonably be expected to convey such meaning." *Swanson*, 342 Ga. App. at 11. Still's and Landmark's flyers not only used the phrase "soliciting children," but referred to Ramaswami being "caught" and called the flyer a "neighborhood alert." Thus, they did give the impression that Ramaswami was being charged with a crime and chose language reasonably expected to convey that meaning.

Moreover, under Georgia law, it is defamation per se to allege that someone has engaged in "some debasing act which may exclude him from society." O.C.G.A. § 51-5-4(a)(2). That is separate from "imputing to another a crime punishable by law." O.C.G.A. § 51-5-4(a)(1). Ramaswami, in his Complaint, specifically alleges that Still's and Landmark's flyers charged him with being guilty of a debasing act. (Doc. 1 at ¶¶ 136, 157.) Still does not even address these allegations and, for that reason alone, his argument relating to defamation per se should be rejected.[6]

### 3. *Still's and Landmark's Statements Were Not Opinion*

Still argues that the statements that he and Landmark made regarding Ramaswami were opinions that cannot give rise to a defamation claim. To present the flyers as opinion, Still addresses not the published, complained-of words, but instead the general message they sought to convey that Still believed Ramaswami was unfit for office. (Doc. 9-1 at 14.) Still devotes three pages of this argument to offering basic generalities about political campaigns and opinions. When he finally returns to analyzing the flyers, he claims that they were expressing an opinion about "whether Plaintiff would be a good legislator." (Doc. 9-1 at 17.) But the issue is not whether Still's self-serving spin on his flyers constitutes opinion, but whether the words of the

---

[6] Finally, even if the statements were not "per se" defamatory, they still were defamatory and, since Ramaswami alleged special damages, the Complaint states a claim for relief.

flyers themselves constituted opinion.

"The pivotal questions are whether the challenged statement can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proven false." *Bryant*, 311 Ga. App. at 235*; see also Gast v. Brittain*, 277 Ga. 340, 341 (2003) ("There is no wholesale defamation exception for anything that might be labeled opinion."). As discussed above, Still's and Landmark's publications can reasonably be interpreted as stating or implying defamatory facts about Ramaswami. The phrase "caught soliciting children" along with the imagery, and additional emphasis on the words "caught" and "minor" suggests to the flyers' recipients that Ramaswami was seeking to have sex with children. Whether someone was or was not attempting to solicit children for sex is capable of being proven true or false – indeed, it is a crime for which someone can be found guilty or not guilty.

Still's attempt to reconfigure the statement to one of expressing the opinion as to whether Ramaswami would be a "good legislator" does not pass the laugh test. But, more importantly, it fails under the case law. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990) (expressions of 'opinion' may often imply an assertion of objective fact" for which liability attaches). Perhaps *Equity Prime Mortgage*, 373 Ga. App. 441, best demonstrates that. In *Equity Prime Mortgage*, congressional candidate

Marjorie Taylor Greene posted on social media about the fact that Equity Prime Mortgage fired Melissa Rolfe, the stepmother of an Atlanta police officer who had been charged with felony murder after shooting Rayshard Brooks. *Id.* at 442. Greene posted: "Melissa's employer caved to the mob and wrongfully fired her! The war on our police officers and their families must end!" *Id.* Greene then posted a bit later: "Officer Rolfe's stepmother, Melissa, has been fired from her job and been treated very unfairly." *Id.*

Equity Prime Mortgage sued Greene for defamation, arguing that it fired Rolfe for reasons unrelated to her stepson's actions. *Id.* The trial court dismissed the claim, finding that Greene's statements were "non-actionable opinion or rhetoric." *Id.* at 444.

The Georgia Court of Appeals reversed. *Id.* Greene's statements, the court concluded, "can be understood to convey a multitude of messages: Greene's statements express not only an opinion on Rolfe's firing, but her statements also necessarily imply the reason for the firing. Indeed, Greene's opinion and the factual implication are nearly inseparable." *Id.* at 445. The court explained that Greene's opinion about the wrongfulness and unfair nature of Rolfe's firing was "indisputably linked" to a "*factual premise* of Rolfe's termination, namely that it was connected with the shooting of Rayshard Brooks." *Id.* (emphasis in original). The court held, therefore, that "Greene's statements may be reasonably interpreted to imply precisely what

16

EPM alleges: again, that Rolfe was fired as a consequence of her connection to Garrett and his use of force as a police officer; this is a factual implication capable of being proven false." *Id*. In short, conveying a factual message even within opinions and campaign rhetoric or hyperbole can be actionable.

Thus, even accepting Still's self-serving view that the flyers articulated his opinion that Ramaswami was not fit to be a legislator, the publications indisputably linked that opinion to the provably false and defamatory factual premise that Ramaswami was "caught soliciting children."

### B.     Ramaswami  Sufficiently Alleges Actual Malice

Still contends that the Complaint should be dismissed because, "*even if the statements were false,* Plaintiff cannot show and has not pleaded actual malice." (Doc. 9-1 at 16) (emphasis added).   Still's entire actual malice argument, however, rests on the contrary premise that *the statements were true* and, since they were true, he could not have known they were false or made them with a reckless disregard of whether they were true or false. Doubling down on his insistence that his statements were true, Still, in effect, concedes that, if the jury finds that his statements were false, he has no lack of actual malice defense. This was not a tactical blunder, for Still and Landmark have no actual malice defense: Still and Landmark know, and knew, that Ramaswami was never "caught soliciting children" for sex, or anything else, in "local schools," or anyplace else.

In any event, as discussed in Section 1, the Complaint easily meets the standards for pleading actual malice in defamation cases. As discussed in Section 2, Still's other arguments in the "Actual Malice" section of his Brief are unrelated to actual malice and otherwise meritless.

### 1. The Complaint Adequately Pleads Actual Malice

Under *New York Times v. Sullivan,* 376 U.S. 254, 279-80 (1964), and its progeny, a public figure may not recover damages for a defamatory falsehood "unless he proves that the statement was made with 'actual malice' – that is, with knowledge that it was false or with reckless disregard of whether it was false or not."[7]  At the pleadings stage, however, the plaintiff "need only allege sufficient facts to permit the inference" that the false statements were made with knowledge they were false or with reckless disregard as to whether they were false or not. *Project Veritas v. CNN, Inc.,* 121 F.4th 1267, 1283 (11th Cir. 2024). "On a Rule 12(b)(6) motion to dismiss, we do not concern ourselves with questions of evidentiary sufficiency, but ask only whether [the plaintiff] laid out enough facts from which malice might reasonably be inferred." *Lemelson v. Bloomberg*, 903 F. 3d 19, 24 (1st Cir. 2018).

---

[7] Still states that Plaintiff's allegations confuse actual malice with "ill will or hatred," sometimes referred to as "common law malice."  (Doc. 9-1 at 19).  This is incorrect. Plaintiff alleges actual malice as an element of Plaintiff's defamation claims against Still and Landmark (Doc. 1 at 24 – 27), and common law malice to defeat any conditional state-law privilege that Still or Landmark might assert.  (Doc. 1 at 22 – 24).

The Complaint easily meets this pleading standard, with an entire section labeled "Still and Landmark Acted with Actual Malice." (Doc. 1 at 24 – 27). The Complaint alleges that Still and Landmark knew "that the Statements and the impressions they left were false." (*Id.* ¶ 119). The Complaint alleges, with respect to each defamatory statement, that Still and Landmark had actual knowledge of falsity. (*Id.* at ¶¶ 120, 121) (Still and Landmark "knew that Ashwin had not been attempting to solicit children for sex"); *id.* at ¶¶ 122, 123 (Still and Landmark knew Ramaswami had not requested students' contact information); *id.* at ¶¶ 126, 127 (Still and Landmark knew Ramaswami "had not sought to 'bypass principals' in an attempt to get student contact information")).

These plausible allegations are sufficient to withstand the motion to dismiss, but the Complaint supports the inference of actual malice with additional allegations:

- Prior to publication, Still and Landmark had possession of the Open Records Act request and the Discord message, which affirmatively refuted Still's and Landmark's defamatory statements. (*Id.* at ¶¶ 122, 124, 126, 127). Possessing information that seriously calls into question the truth of the allegedly defamatory statements supports an inference of actual malice. *See Veritas*, 121 F.4th at 1284; *Lemelson*, 903 F.3d at 25.

- Still and Landmark knew the defamatory statements were false because they were implausible. "Still and Landmark knew that Ashwin, a candidate for public office, would not use an Open Records Act request to public schools as a means of soliciting children for sex." (*Id.* at ¶ 131). *See Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 158-59 (1967); *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. 1969).

- Still and Landmark used and cited unreliable "sources" to support and amplify his false statements, (Doc. 1 at ¶¶ 129-130), further evidence of actual malice. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Zuckerbrot v. Lande*, 167 N.Y.S.3d 313, 335-36 (N.Y. Sup. Ct. 2022).

In his Brief, Still does not address any of these allegations, much less attempt to show that they are insufficient to "give rise to a reasonable inference" that the false statements were made with knowledge that they were false or with a reckless disregard as to whether they were false or not.

### 2. Still's Other Arguments about Actual Malice are Meritless

Apart from arguing that he could not have had knowledge of the falsity of his statements because the statements were true, Still makes a number of statements in Part II of his Brief that are unrelated to actual malice and otherwise meritless.

As noted above, Still suggests that a different standard of proving defamation or actual malice applies to "political speech" or speech in the

context of political campaigns. But this is not the law. *See supra* Pages 3-4 (citing cases). Still confuses the First Amendment's prohibition of regulation upon "political speech" with the First Amendment requirements in defamation cases brought by public figure plaintiffs. (Doc. 9-1 at 18, 20-21). Still cites *McIntyre v. Ohio Elections Commission,* 514 U.S. 334, 336 (1995), a case holding that Ohio's ban on anonymous pamphleteering violated the First Amendment. The case has nothing to do with actual malice or defamation law. Still goes on: "Further, in the context of a political campaign, statements that are substantially true are protected and Plaintiff cannot sustain the constitutionally imposed burden to prove them materially false." (Doc. 9-1 at 20-21). Still cites two cases in support of this statement—*Bryant,* 311 Ga. App. at 234-35, and *Horsely v. Rivera,* 292 F.3d 695, 701-02 & n. 2 (11th Cir. 2002) — neither of which involved a political campaign or addressed "substantial truth" or "material falsity."

Still's argument that mistakes about "minor details" "in political speech" are insufficient to establish actual malice (Doc. 9-1 at 21) does not warrant dismissal of the Complaint, which, as explained above, plausibly alleges that the statements by Still and Landmark were substantively false because, among other reasons, Ramaswami was never "caught soliciting children in local schools."

In sum, the Complaint alleges "sufficient facts to permit the inference" that the false statements were made with knowledge of, or reckless disregard to, their falsity.

### C.     The Complaint States a Claim for False Light

In Count II, Ramaswami alleges that the statements by Still and Landmark "have placed Ashwin in a false light" because they would "lead the public to believe that Ashwin was a pedophile and/or a child predator seeking to solicit children for sex." (Doc. 1 at 33-24, ¶¶ 163, 164). The Complaint further alleges offensiveness and that Still and Landmark acted with actual malice. (*Id.* ¶¶ 166, 168). These plausible allegations state a claim for false light invasion of privacy under Georgia law.  *See Rao v. Tropical Bar by Punta Cana, LLC,* No. 3:24-CV-121-CDL, 2025 U.S. Dist. LEXIS 69416 at *4 (M.D. Ga. April 11, 2025) (citing cases).

Still nevertheless contends that Ramaswami's false light claim should be dismissed because it is duplicative of Ramaswami's defamation claim and relies on "innuendo."[8]  These arguments are without merit.

---

[8] Still contends that Ramaswami's false light claim "is barred by a lack of allegations of actual malice," (Doc. 9-1 at 23), referencing the same argument on Ramaswami's defamation claim.  As explained in Part III(B), the argument is without merit.

*Ramaswami may allege both defamation and false light*
        *claims in the Complaint under Federal Rule 8(d)*

Still contends that since Ramaswami's false light claim is based on the

same statements as Ramaswami's defamation claim, it must be dismissed as

duplicative.  (Doc. 9 – 1 at 22).  Under Federal Rule of Civil Procedure 8(d),

however, litigants in federal court may pursue duplicative and alternative

claims, regardless of their consistency. *Allstate Ins. Co. v. James*, 779 F.2d

1536, 1540 (11th Cir. 1986). Still's argument has been flatly rejected in recent

decisions from the Northern District of Georgia that are directly on point. In

*Andrews v. D'Souza,* 696 F. Supp. 3d 1332, 1357 (N.D. Ga. 2023), the

defendant, like Still here, argued that the plaintiff's false light claim should

be dismissed because it relied on the same statements as the plaintiff's

defamation claim.  The court rejected the argument, reasoning:

> While Andrews alleges that Defendants' statements about him
> were defamatory, the evidence may prove otherwise. A plaintiff
> may plead inconsistent claims and remedies. Fed. R. Civ. P. 8(d) .
> . .  Defendants' argument does not provide a basis
> for dismissing this claim at the pleading stage.

Similarly, in *Krass v. Obstacle Racing Media,* No. 1:19-CV-05785-JPB, 2021

U.S. Dist. LEXIS 206760, at *10 (N.D. Ga. Feb. 2, 2021), the District Court

rejected the same argument on identical grounds:

> Additionally, Defendants argue Krass's "false light claim also
> fails as a matter of law because he has alleged that the
> challenged statements are defamatory." *Id*. at 24 (citing *Smith v.
> Stewart*, 291 Ga. App. 86, 660 S.E.2d 822, 834 (Ga. Ct. App. 2008)
> ("In order to survive as a separate cause of action, a false light

claim must allege a nondefamatory statement. If the statements alleged are defamatory, the claim would be for defamation only, not false light invasion of privacy.")). Under Federal Rule of Civil Procedure (8)(d), however, a party may assert alternative claims in his pleadings regardless of consistency. Therefore, Krass is not required to plead one claim or the other; he may plead both.

*See also Rao, supra* (denying motion to dismiss plaintiffs' false light claim that was based on the same false advertisement as the plaintiffs' defamation claim); *Youngblood v. McDermott Vida-Flo USA Fulfillment, LLC Hydration Station USA Franchise Sys., LLC,* Fulton County State Court, 2025 Ga. State LEXIS 1419 (March 24, 2025) (rejecting similar argument under Georgia Civil Practice Act, O.C.G.A. § 9-11-8(e)(2)).

Under the clear language of Federal Rule 8(b), and the holdings of these recent cases, the fact that the false light and defamation claims are based on the same statements provides no basis for dismissing either claim.

### 2. False light claim is not based on "innuendo"

Citing *Zarach v. Atlanta Claims Ass'n,* 231 Ga. App. 685, 690 (1998), Still contends that Ramaswami's false light claim must be dismissed because "Plaintiff can only arrive at his 'false' interpretation by innuendo." (Doc. 9-1 at 23). *Zarach* does not support the argument. *Zarach* was based on the summary judgment record and has nothing to say about the adequacy of pleading a claim for false light invasion of privacy. More to the point, summary judgment was granted on the false light claims in *Zarach,* not because the false light depended upon "innuendo," but because the light in

which the statements cast the plaintiff was, as a matter of fact, not false: "Plaintiffs were not presented in a false light; they were depicted as being what they were—professionals targeting Vietnamese patients for their insurance claims business." 231 Ga. App. at 690. Here, by contrast, Ramaswami alleges that the statements by Still and Landmark "have placed Ashwin in a false light" because they would "lead the public to believe that Ashwin was a pedophile and/or a child predator seeking to solicit children for sex." (Doc. 1 at 33-34, ¶¶ 163, 164).

### D.     Litigation Expenses and Punitive Damages

Finally, Still contends the claims for litigation expenses (Count III) and punitive damages (Count IV) cannot survive the dismissal of Counts I and II. Since Counts I and II should not be dismissed, the motion with respect to these counts should also be denied.

For the foregoing reasons, Still's Motion to Dismiss should be denied.

Respectfully submitted this 2nd day of October, 2025.

Of counsel:

Michael J. Teter
TETER LEGAL
P.O. Box 522365
Salt Lake City, UT 84152
Tel: (385) 262-3650
michael@teterlegal.com

*/s/ Bruce P. Brown*
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 386-6856
bbrown@brucepbrownlaw.com

*Counsel for Plaintiff Ashwin Ramaswami*

## CERTIFICATE OF SERVICE AND CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

Pursuant to N.D. Ga. L.R. 5.1(C), I certify that the foregoing was prepared using Century Schoolbook 13 font. I electronically filed this using CM/ECF, thus electronically serving all counsel of record.

This 2nd day of October, 2025.

*/s/Bruce P. Brown*
Bruce P. Brown