**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION**

| | | |
|---|---|---|
| ASHWIN RAMASWAMI, | * | |
| Plaintiff, | * | |
| v. | * | 1:25-CV-04483-ELR |
| SHAWN STILL and LANDMARK COMMUNICATIONS, INC., | * | |
| Defendants. | * | |

**ORDER**

This matter is before the Court on Defendant Shawn Still's Motion to Dismiss. [Doc. 9]. The fully briefed Motion is ripe for the Court's review. For the reasons discussed below, the Court is due to deny the Motion.

## I. Background[1]

This case is about defamation that allegedly occurred during a 2024 general election political campaign in a race between Ashwin Ramaswami and Shawn Still for the Georgia state Senate District 48. As part of a campaign focused on engaging

[1] For purposes of the present motion, the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

younger potential voters, Ramaswami submitted an Open Records Act request to the Fulton County School System requesting a list of students currently attending the three local high schools in Johns Creek. Compl. ¶¶ 42–47 [Doc. 1]. The Fulton County School System denied the request, and Ashwin did not challenge the denial. Id. ¶ 49.

In early September 2024, Still published and mailed to constituents the following front-and-back flyer ("Flyer #1"):






Id. ¶¶ 61–62. According to Ramaswami, Flyer #1 includes at least four false statements: (1) "Senate candidate Ashwin Ramaswami was caught soliciting children in local schools"; (2) Ramaswami "tried to solicit students in North Fulton and Forsyth Schools"; (3) Ramaswami made "an open records request, asking for the names and numbers of all students enrolled in high schools"; and (4) on "private social media" the campaign sought to "bypass principals in schools." Id. ¶¶ 60–61, 76. And, according to Ramaswami, by depicting "the image of a young child receiving a call from Ramaswami, Flyer #1 also falsely "implies that Ramaswami was calling young children to solicit sex." Id. ¶ 76.

Around mid-September 2024, Still published and circulated to households in Senate District 48 another front-and-back flyer ("Flyer #2"):






Id. ¶¶ 63–64. Flyer #2 allegedly falsely stated that: (1) "State Senate Candidate Ashwin Ramaswami is soliciting children in your area"; (2) Ramaswami's Open Records Act request was "seeking the names and phone numbers of 5,493 underage children"; and (3) Ramaswami demanded "direct access to your children's contact information." Id. ¶¶ 63, 86.

On August 8, 2025, Ramaswami brought this action against Still and Landmark Communications asserting claims for defamation *per se* (Count I) and false light (Count II), as well as claims for punitive damages (Count III) and expenses of litigation (Count IV). See generally Compl. Still moves to dismiss the Complaint, and Ramaswami opposes the motion. [Docs. 9, 16].

## II. Legal Standard

Pursuant to Rule 12, a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true the complaint's allegations and draw all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); United States v. Stricker, 524 F. App'x 500, 505 (11th Cir. 2013). Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Twombly, 550 U.S. at 555); Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007).

Additionally, to survive a Rule 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Put differently, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This so-called "plausibility standard is not akin to a 'probability requirement'"; rather, the plaintiff must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim. Id.; Twombly, 550 U.S. at 556.

**III. Discussion**

Still raises several arguments in support of dismissal of Ramaswami's defamation claim. Specifically, Still argues that the challenged statements are substantially true, do not accuse Ramaswami of a specific crime, constitute nonactionable political opinion, and were not published with the actual malice required of a public-figure plaintiff. [Doc. 9-1 at 15–30].[2] Still further argues that because Ramaswami's claim for defamation fails, so must his false-light claim fail.

[2] All citations are to the electronic docket and the page numbers referenced are those imprinted by the Court's docketing software, unless otherwise noted.

[Id. at 30–31]. The Court addresses each claim and Still's corresponding arguments in turn.

## A. Defamation

To successfully maintain a defamation claim under Georgia law, the plaintiff must plausibly allege "four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." ACLU, Inc. v. Zeh, 864 S.E.2d 422, 427 (Ga. 2021). "When applying state defamation law to public figures, the First Amendment imposes additional limitations," requiring that: (1) "the alleged defamatory statement must be sufficiently factual to be susceptible of being proved true or false"; (2) "the statement must be actually false"; and (3) the plaintiff "must prove that the defendant made the alleged defamatory statement with actual malice." Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc., 6 F.4th 1247, 1252 (11th Cir. 2021) (cleaned up). The court must read the alleged defamatory statement as a whole and within the context of how the readers would ordinarily understand it. Fiske v. Stockton, 320 S.E.2d 590, 592–93 (Ga. Ct. App. 1984) overruled on other grounds by, Oskouei v. Matthews, 912 S.E.2d 651 (Ga. 2025). If the meaning of the statement is "so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or

not." Id. However, if the statement "is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, . . . which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read." Id.

1. Substantial truth

Still first argues that Ramaswami has not alleged sufficient facts to show that the statements at issue are false. [Doc. 9-1 at 16]. Indeed, in Still's view, the challenged statements are substantially true. [Id.] The Parties agree, however, that the challenged statements cannot be considered in isolation and instead must be considered in the context of the Flyers as a whole. [Docs. 16 at 17; 19 at 8–11]. Still contends that, when viewed in their full context, the Flyers are susceptible to only one reasonable interpretation and contain no false statement. [Doc. 19 at 10–11].

Considering each Flyer as a whole and in a manner an ordinary reasonable person would understand it, the Court cannot conclude at this stage that the Flyers bear only the nondefamatory meaning Still advances and that the campaign-outreach interpretation is the only reasonable interpretation. See Rubin v. U.S. News & World Rep. Inc., 271 F.3d 1305, 1308 (11th Cir. 2001) (evaluating whether the allegedly defamatory implication was supported by a reasonable reading of the publication as a whole). Still correctly observes that the Flyers themselves provide context for the challenged statements, including by reproducing the Open Records Act request and

explaining that Ramaswami sought student information in connection with his campaign. [Doc. 19 at 10–13]. The context may support Still's proposed interpretation of the phrase "soliciting children." But the Court must consider the entirety of the publications, including not only their explanatory text but also their headlines, accompanying statements, and images. When the words and images are considered together, a reasonable reader could understand the Flyers as implying that Ramaswami was engaged in improper or predatory conduct toward minors, including soliciting children for sexual purposes.

Flyer #1 states that Ramaswami was "caught soliciting children in local schools" and he "tried to solicit students in North Fulton and Forsyth Schools." Compl. ¶ 61. It further states that Ramaswami sought the "names and numbers" of students and that his campaign encouraged individuals to "bypass principals in schools" and asks, "Why would Ramaswami want to contact children without parental consent?" Id. ¶ 61. That Flyer also depicts an individual, which a reasonable person may perceive as a child, holding a phone showing an incoming call from Ramaswami. Id.

Flyer #2 similarly displays Ramaswami's photograph beneath the heading "NEIGHBORHOOD ALERT" and states that he is "soliciting children in your area." Compl. ¶¶ 63, 86. It further states that Ramaswami sought "names and phone

numbers of 5,493 underage children," sought to "bypass parents' consent," and demanded "direct access to your children's contact information." Id. ¶ 86.

Considering the statements and images in the Flyers as a whole, the Court cannot conclude that the unambiguous point of the Flyers is that Ramaswami sought a list of students currently attending three certain high schools in order to solicit their support for his campaign. Compl. ¶ 43. Still characterizes the true gist of the Flyers as being that Ramaswami "solicit[ed] support for his campaign" and "solicit[ed] information about children." However, the Flyers' attention-grabbing headlines and imagery, even considered together with their reference to the Open Records Act request, could reasonably convey an implication of improper and predatory, perhaps even salacious, conduct by Ramaswami toward minors.

Still's reliance on Pick v. Raffensperger, No. 24-14151, 2025 U.S. App. LEXIS 27244 (11th Cir. Oct. 20, 2025), does not alter this conclusion. [Doc. 20]. As relevant here, the issue in Pick was a video, which the plaintiff had shown to a Georgia Senate subcommittee, that the defendant characterized as, among other things, "sliced and diced" or "edited." Pick, 2025 U.S. App. LEXIS 27244 at * 12, *21. While these characterizations could inaccurately suggest that the plaintiff (or the team she was working with) had physically altered the video, the Eleventh Circuit concluded that the potential inaccuracy did not alter the substantial truth and the "unambiguous point" of the publication that the plaintiff had presented only

selected portions of the video that supported her position. Id. at *23. The court therefore concluded that the difference between literally editing the video and fast-forwarding and rewinding the complete footage to selected portions was not substantial enough to render the statements false. Id. In other words, "minor factual errors which do not go to the substance, the gist, or sting of a story do not render a communication false for defamation purposes." Id. at *20 (cleaned up).

Unlike in Pick, the Flyers' characterizations are not simply "minor factual errors." Ramaswami alleges that he sought student names for voter-registration and campaign-related purposes but did not seek students' phone numbers or other contact information or attempt to circumvent school officials to obtain access to students. Compl. ¶¶ 86, 126. But the Flyers' assertions concerning Ramaswami seeking children's contact information, direct access to children, bypassing parental consent and school officials, considered together with the Flyers' other language and imagery, could materially alter the gist or sting of the publication. Accordingly, the Court cannot conclude as a matter of law that the challenged statements are substantially true. While Still's interpretation is reasonable, it is not necessarily the only reasonable interpretation.

2. Defamation *per se*

Still contends that Ramaswami fails to state a claim for defamation *per se* because the Flyers do not accuse him of committing a specific crime. [Doc. 9-1

at 11–14]. As relevant here, Georgia law recognizes as defamation *per se* statements that impute to another a crime punishable by law. O.C.G.A. § 51-5-4(a)(1). To fall within this category, the words at issue must "charge the commission of a specific crime punishable by law" and give the impression that the plaintiff is being charged with a crime. Cottrell v. Smith, 788 S.E. 2d 772, 781 (Ga. 2016) (cleaned up). Where the plain import of the words imputes no criminal offense, their meaning cannot be enlarged by innuendo. Id.

Still argues that this standard is not satisfied. Still points out that Ramaswami alleges that the Flyers implicate Ramaswami as having violated O.C.G.A. § 16-6-5, which criminalizes "enticing a child for indecent purposes." [Doc. 9-1 at 19-22]; see O.C.G.A. § 16-6-5. But, according to Still, because the Flyers use the word "soliciting" instead of "enticing,"—they do not charge Ramaswami with violating § 16-6-5. [Doc. 9-1 at 20].

The Court, however, need not resolve whether the Flyers charge Ramaswami with a specific crime because Still's argument does not address Ramaswami's alternative basis for alleging defamation *per se*. [Doc. 16 at 20]. Section 51-5-4(a)(2) separately encompasses statements charging a person with "some debasing act which may exclude him from society." O.C.G.A. § 51-5-4(a)(2); see Cottrell, 788 S.E.2d at 780. Ramaswami alleges that the Flyers' portrayal of him as soliciting children for sex charged him with such a debasing act. Compl. ¶¶ 136, 157. For these

reasons, Still's argument that the Flyers do not expressly charge Ramaswami with the specific offense identified in the Complaint does not warrant dismissal of his defamation *per se* claim.

3. Unactionable opinion

Still contends that the Flyers convey "non-actionable opinions" because they comment on Ramaswami's fitness for office during a political campaign. [Doc. 9-1 at 14–18]. But the fact that the Flyers were published in the context of a political campaign does not necessarily render their content nonactionable opinion. Rather, an opinion may support a defamation claim if, considered in the context of the entire publication, it can reasonably be interpreted to state or imply defamatory facts capable of being proved false. See Equity Prime Mortg., LLC v. Greene for Cong., Inc., 908 S.E.2d 717, 721 (Ga. App. 2024). As discussed above, the Flyers contain factual assertions about the information Ramaswami sought and the way he allegedly sought access to students. Those assertions are capable of being proved true or false. Accordingly, the Flyers' political context does not render the challenged factual assertions nonactionable opinion.

Still further relies on Trump v. Cable News Network, No. 23-14044, 2025 U.S. App. LEXIS 30125, *2 (11th Cir. Nov. 18, 2025), to argue that like the phrase "Big Lie" at issue there, the term "soliciting" here is too ambiguous to constitute a verifiable statement of fact. [Doc. 22 at 2]. In Trump, the Eleventh Circuit concluded

that CNN's characterization of Trump's election-related claims as the "Big Lie" constituted opinion rather than an actionable statement of fact. Id. at *7. The court reasoned that the phrase was ambiguous and reflected a "subjective assessment" of Trump's conduct that was "not readily capable of being proven true or false." Id. at *6.

The challenged publications here are materially different. The Flyers do not merely characterize Ramaswami's conduct using ambiguous or subjective language; they make factual assertions about what information Ramaswami sought and the way he sought access to students. Whether Ramaswami requested students' phone numbers or other contact information, sought "direct access" to children's contact information, or attempted to bypass school officials are matters susceptible to objective verification. And, as discussed above, those factual assertions form part of the context in which the Flyers repeatedly state that Ramaswami was "soliciting children" and contribute to the meaning reasonably conveyed by the publications as a whole. Thus, unlike the characterization "Big Lie" in Trump, the challenged statements cannot be dismissed merely as unverifiable subjective assessments of Ramaswami's conduct.

4. Actual malice

Still also contends that the Complaint should be dismissed for Ramaswami's failure to plead actual malice. [Doc. 19 at 16]. Under Georgia law, candidates for

public office, like Ramaswami, are public figures. Howard v. Pope, 282 Ga. App. 137, 141 (2006). A public-figure plaintiff must establish actual malice by clear and convincing evidence to succeed on his defamation and false-light invasion of privacy claims. Moore v. Cecil, 174 F.4th 862, 867 (11th Cir. 2026).

At the pleading stage, a public-figure plaintiff must allege "facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." Michel v. NYP Holdings, Inc., 816 F.3d 686, 702 (11th Cir. 2016) (cleaned up). Actual malice is a subjective inquiry requiring allegations that the defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." Id. at 702–03. Where the plaintiff alleges defamation by implication, he must additionally

> show by clear and convincing evidence not only (1) that the defendant knew of or recklessly disregarded the falsity of the implied defamatory statement, but also (2) that the defendant intended to communicate the defamatory meaning or recklessly disregarded the defamatory meaning—*i.e.*, the defendant knew that the defamatory meaning was not just possible, but likely, and still made the statement despite their knowledge of that likelihood.

Id. at 883 (cleaned up).

Still relies on Moore which likewise involved political campaign advertising alleged to imply sexual misconduct involving a minor. 174 F.4th at 867 [Doc. 28]. But Moore addressed whether the evidence presented at trial was sufficient to

establish actual malice by clear and convincing evidence. Id. at 867–68. Here, by contrast, the Court considers whether the Complaint plausibly alleges actual malice, accepting its well-pleaded factual allegations as true.

Ramaswami has adequately pleaded actual malice. The Complaint does not merely conclusorily allege that Still knew the challenged statements were false. It alleges facts from which such knowledge or reckless disregard may plausibly be inferred. Specifically, Ramaswami alleges that because Still possessed the Open Records Act request, he knew that Ramaswami had not requested high school students' contact information but nevertheless stated that Ramaswami sought the "names and phone numbers of 5,493 underage children" to children's contact information. Compl. ¶¶ 86, 90–91, 119–27. These alleged discrepancies are relevant not merely to whether the Flyers conveyed false information, but also to Still's subjective awareness of the alleged falsity.

Still further argues that Moore requires the dismissal of Ramaswami's Complaint because the Flyers reproduced the Open Records Act itself, thereby providing readers with the underlying information necessary to evaluate the challenged statements. [Doc. 28 at 4]. The Court recognizes that the inclusion of source material may weigh against an inference of actual malice. Moore, 174 F.4th at 886–87. But accepting the Complaint's allegations as true, Still's possession of the request cuts both ways: the same document that may have provided readers with

additional context also allegedly informed Still that Ramaswami had not requested the contact information the Flyers attributed to him. Thus, unlike allegations resting solely on a defamatory implication that could be drawn from otherwise accurate statements, the Complaint identifies allegedly false factual assertions and alleges facts supporting Still's contemporaneous knowledge of their falsity.

The Complaint also plausibly alleges the second component identified in Moore that Still knew that the defamatory meaning was not just possible, but likely, and still made the statement despite their knowledge of that likelihood. The allegedly false assertions concerning children's contact information and access to children were presented alongside statements such as Ramaswami was "caught soliciting children" and was "soliciting children in your area" and was bypassing parents and school officials in an effort to directly access students in the context of a "NEIGHBORHOOD ALERT" or child-focused imagery. Compl. ¶¶ 63, 76, 86. This presentation style, according to Ramaswami, was knowingly selected to convey "a false impression that [Ramaswami] had engaged in criminal solicitation of children."Id. ¶ 134. Considered collectively, those allegations plausibly support an inference that Still knew that the alleged defamatory meaning was not merely possible but likely but nevertheless publicly disseminated the Flyers.

Accordingly, although the inclusion of the Open Records Act request provides context supporting Still's interpretation of the Flyers, the Court cannot conclude at

this stage that it forecloses a plausible inference of actual malice. The Complaint plausibly alleges both that Still knew or recklessly disregarded the falsity of the alleged defamatory statements and their implication and that he knew or recklessly disregarded the likelihood that the Flyers would communicate that implication. Whether Ramaswami can ultimately establish actual malice by clear and convincing evidence is a question for a later stage of the proceedings.

**B. False Light**

For many of the same reasons that Ramaswami's defamation *per se* claim survives dismissal, his false-light claim also survives. "To establish a claim of false light, a plaintiff must establish the existence of false publicity that depicts the plaintiff as something or someone which []he is not." Ass'n Servs. v. Smith, 549 S.E.2d 454, 459 (2001). And "[i]t is black letter law that the plaintiff in a false light case must establish that the publicity was in fact false." Monge v. Madison Cty. Record, Inc., 802 F. Supp. 2d 1327, 1336 (N.D. Ga. 2011) (cleaned up).

Here, Ramaswami alleges that the Flyers falsely portrayed him as a "pedophile and/or a child predator seeking to solicit children for sex." Compl. ¶¶ 163–64. For the reasons discussed above, the Court concludes that Ramaswami has plausibly alleged that the Flyers could convey that meaning and that the factual assertions contributing to that meaning were false. Ramaswami has therefore plausibly alleged that the Flyers placed him in a false light.

Alternatively, Still argues that the false light claim fails because it is duplicative of Ramaswami's defamation claim. [Doc. 9-1 at 30]. Although Georgia courts have recognized that a false light claim does not survive as a separate cause of action where the challenged statements are themselves defamatory, Federal Rule of Civil Procedure 8(d) permits a plaintiff to plead claims in the alternative. See Andrews v. D'Souza, 696 F. Supp. 3d 1332, 1357 (N.D. Ga. 2023). Accordingly, at the pleading stage, the fact that Ramaswami's false light and defamation claims arise from the same publications does not require dismissal of the false light claim. See id.

Still also argues that Ramaswami's false-light theory fails because it depends on "innuendo." [Doc. 9-1 at 31(citing Zarach v. Atlanta Claims Ass'n, 500 S.E.2d 1, 6 (Ga. Ct. App. 1998))]. But Zarach, the case on which Still relies, does not establish that a false light claim necessarily fails where the alleged false impression arises from the publication. Rather, there, on summary judgment, the court concluded that the plaintiffs were not portrayed in a false light because they "were depicted as being what they were." Zarach, 500 S.E. 2d at 6. Here, by contrast, the allegations indicate that the Flyers do not depict Ramaswami as he is. Ramaswami alleges that the Flyers portray him falsely by creating the impression that he was a child predator seeking to solicit children for sex. Compl. ¶¶ 163–64. And, as discussed above, the Court concludes that the Flyers are reasonably capable of

conveying that meaning. Thus, Still's call for the dismissal of Ramaswami's false light claim based on his reliance on Zarach fails.

Finally, to the extent Still argues that Ramaswami's false light claim fails because has not adequately alleged actual malice, the Court rejects that argument for the reasons discussed above. Supra Sec. III.A.4. Accordingly, Ramaswami's false-light claim (Count II) is plausibly alleged.[3]

## IV. Conclusion

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss [Doc. 9]. Defendant Still **SHALL** file his Answer no later than **14 DAYS** from the entry of this order, and the Parties **SHALL** file their Joint Preliminary Report and Discovery Plan no later than **30 DAYS** from the filing of the Answer.

**SO ORDERED**, this 30th day of September, 2026.

Eleanor L. Ross

Eleanor L. Ross
United States District Judge
Northern District of Georgia

[3] Still also argues that Ramaswami's claims for punitive damages (Count III) and litigation expenses (Count IV) must be dismissed because his underlying defamation and false-light claims fail. [Doc. 9-1 at 24]. Because the Court concludes that Ramaswami has plausibly stated those underlying claims, Still's argument for dismissal of the derivative claims for punitive damages and litigation expenses likewise fails.